IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANK CANDELARIA,

        Plaintiff,

vs.                      No. CIV-00-823 M/DJS
                          (Honorable Richard Williams by designation)

THE CITY OF ALBUQUERQUE, et al.,

        Defendants.

## DEFENDANTS' PROPOSED
## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

Defendants, the City of Albuquerque and Corrections Department Director John Dantis, (hereinafter the "City" and "Dantis") hereby submit the following findings of fact and conclusions of law which Defendants propose should be adopted as the decision of the Court following trial of this matter.

### Proposed Findings of Fact

1.    Plaintiff Candelaria is employed at the Bernallilio County Detention Center which is operated by the City of Albuquerque for the County. Candelaria's primary assignment is as a "Transport Officer" which involves the transport of inmates between facilities, courts and medical providers.

2.    On October 29, 1999, Plaintiff Candelaria requested an overtime assignment involving a lengthy trip transporting female inmates to the McKinley County jail in Gallup, New Mexico.

3.    Candelaria was told he could not have the assignment because



management wanted female corrections officers to be included in this long distance transport of female inmates.

4.     Management felt that allowing male only transport crews to transport female inmates over a long distance was a problem because the male transport crew would have additional difficulty responding to inmates' requests related to female problems or the restroom. Further, male only transport crews would be more vulnerable to false allegations of inappropriate behavior.

5.     Candelaria felt that his loss of the Gallup transport assignment was discrimination based on his gender and wrote a letter of complaint to Dantis on November 15, 1999.

6.     Also on November 15, 1999, Candelaria filed an unfair labor practices charge with the City of Albuquerque Labor-Management Relations Board. Candelaria's unfair labor practices charge alleges that, by assigning female officers to the October 29, 1999, Gallup transport, the Corrections Department had violated Article 2 of the collective bargaining agreement which prohibits discrimination on the basis of gender.

7.     The City of Albuquerque Labor-Management Relations Board is a three person independent adjudicatory board of volunteers experienced in labor relations. One Board member is chosen by the unions which represent employees, one member is chosen by the Mayor and the chair of the Board is then chosen by the first two. The Board has authority to determine and remedy violations of collective bargaining agreements between unions and the City.

8. The Board heard Candelaria's unfair labor practices charge on June 1, 2000 and June 15, 2000.

9. Candelaria and his union representatives presented witnesses, documents and arguments concerning several issues including the claim that the Corrections Department had violated Article 2 (Non-Discrimination) of the Union contract.

10. In Finding of Fact #10, the Board found that the City had "established a legitimate non-discriminatory business reason for having at least one female transport officer accompany out of county female inmate transports...."

11. In Conclusion of Law #4, the Board concluded that the Corrections Department was not in violation of Article 2 (Non-Discrimination) of the collective bargaining agreement in requiring at least one female transport officer to accompany female inmates on an out of county transport.

12. Because the decision to send female guards on every out of county transport of female inmates had not been discussed with the Union prior to implementation, Candelaria was awarded any overtime he lost when he was not assigned to the October 29, 1999 transport. Candelaria was paid that overtime.

13. Labor Board decisions may be challenged by administrative appeal to New Mexico state district court. Candelaria did not appeal or otherwise challenge the decision of the Board in state district court.

14. Out of county transports were phased out at the end of 1999 and Candelaria did not request any other out of county transports after October 29,

1999.

15. On February 16, 2000, Candelaria filed a Charge of Discrimination with the federal Equal Employment Opportunity Commission. Candelaria's EEOC charge alleges that he was the victim of gender discrimination on October 29, 1999 when he was denied assignment to a transport of female inmates. Candelaria's EEOC charge does not allege a continuing pattern of discrimination or mention retaliation and Candelaria has never amended his charge.

16. After receiving a "right-to-sue" letter from the EEOC, Candelaria filed the Complaint herein on June 5, 2000. Candelaria has not received a "right-to-sue" letter encompassing his allegations concerning the female only satellite or retaliation.

17. Candelaria alleges that the City violated Title VII by discriminating against him on the basis of gender and retaliating when he complained. Causes of Action #1 and #2.

18. In his Complaint, Candelaria also alleges that the City violated his First Amendment rights by retaliating against him for speaking out. Cause of Action #3.

19. Candelaria spoke out against the alleged discrimination by sending a letter to Defendant Dantis and presenting his unfair labor practices charge to the Labor Board. The letter to Dantis and the charging letter which initiated the unfair labor practice proceeding were delivered in mid-November of 1999.

20. Candelaria identifies two practices which he believes show that the City

4

discriminates against males; requiring the presence of female guards on long distance transports of female inmates and, to the greatest extent possible, allowing only female guards to work at a female-only satellite facility.

21.   Candelaria applied to work overtime at the female-only satellite facility once he learned that male guards would not ordinarily be allowed to work there. Candelaria identified a list which showed that he first requested overtime at the satellite facility in the fall of 1999.

22.   Candelaria stated that as far as he was concerned, the City began to retaliate against him for complaining about gender discrimination beginning on October 21, 1999.

23.   Candelaria did not allege retaliation in his EEOC charge, however, he believes that the Westside Jail staffing pattern was changed in early 2001 to retaliate against him by eliminating certain overtime assignments which he preferred.  Candelaria has never been denied the opportunity to work overtime but some particular assignments, such as the female only satellite positions, have been denied him.

24.   The satellite facility has only female inmates housed in a dormitory style environment.  Officers assigned there must either walk the inmate housing areas or sit at the desk at the control center.  The control center is accessible to inmates and the corrections officers assigned to the control desk must be available to assist or relieve the floor officer.  The officer walking the dormitory floor frequently doesn't have a partner and the control center officer is also

usually alone.

25.    In these circumstances, male officers represent an unnecessary invasion of inmate privacy because they could necessarily be in a position to observe inmates dressing, using the bathroom or showering.  Further, the assignment of male officers could increase allegations by inmates of inappropriate officer behavior because the officers are often not protected by having a partner observer.  Such allegations are difficult and expensive to defend and have a great adverse impact on officer morale.  Finally, the satellite assignments represent an infinitesimal percentage of available assignments, so exclusion of males has little impact on officer overtime choices.

26.    Inmate privacy and the prevention of false allegations of officer impropriety are legitimate non-discriminatory business justifications for limiting the assignment of male officers to situations where only females are present.

27.    The City established legitimate non-discriminatory business reasons for having at least one female officer accompany out of county female inmate transports and not assigning male officers to the female only satellite facility.

28.    Candelaria has not missed work or consulted any medical care providers because of his alleged distress over the loss of particular overtime assignments.

29.    Candelaria has not established any damages stemming from real or alleged discrimination.

## PROPOSED CONCLUSIONS OF LAW

1.    The doctrine of collateral estoppel bars that portion of Candelaria's First

Cause of Action which alleges that it was gender discrimination for the City to assign at least one female guard on long distance transports of female inmates. University of Tennessee v. Elliott, 478 U.S. 788 92 L.Ed. 2d 635, 106 S. Ct. 3220 (1986)

2. Candelaria failed to exhaust administrative remedies as to his retaliation claim and as to the claim that he should be allowed to work at the female-only satellite facility. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.), cert. denied, 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997).

3. The First Amendment does not protect the speech of public employees about matters of private concern and plaintiff's First Amendment allegations do not state a claim. Connick v. Myers, 461 U.S. 138, 146-47, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983).

4. Plaintiff's allegations of intentional infliction of emotional distress are precluded by the New Mexico Tort Claims Act. Romero v. Otero, 678 F.Supp. 1535 (D.N.M. 1987).

5. The City has established that it had legitimate non-discriminatory business reasons for precluding Candelaria from the October 29, 1999 female only transport and refusing to assign him to the satellite facility and Candelaria has not proven a violation of his rights under Title VII.

6. Plaintiff has not presented any evidence that he has been damaged as a result of the alleged discrimination or in retaliation for his bringing of those allegations and is entitled to no relief.

7

Respectfully submitted,
CITY OF ALBUQUERQUE
Robert M. White
City Attorney

Charles W. Kolberg
Assistant City Attorney
PO Box 2248
Albuquerque, NM 87103
Telephone: 768-4500

I hereby certify that a true copy of the foregoing pleading was mailed to:

Jonas Rane
Attorney for Plaintiff
1000 2nd Street NW
Albuquerque, NM 87102
Telephone: 764-0224

on this 4th day of October, 2001.

Charles W. Kolberg